UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANZHIN KHAIDAPOV,<br><br>        Petitioner,<br><br>    v.<br><br>PAM BONDI, Attorney General of the United States; KRISTI NOEM, Secretary of U.S. Department of Homeland Security; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and SAMUEL OLSON, Field Office Director, ICE Enforcement and Removal Operations, Chicago Field Office.<br><br>        Respondents. | No. 26 CV 1739<br><br>Judge Georgia N. Alexakis |

## ORDER

Petitioner Ranzhin Khaidapov, a Russian national, was arrested without a warrant by federal agents on February 17, 2026, while appearing for a routine appointment with Immigration and Customs Enforcement ("ICE") in Chicago, Illinois. [1] ¶¶ 2, 9.[1] Khaidapov was initially detained at an ICE facility in Broadview, Illinois, *id.* ¶ 2, and remains in federal custody in the Clay County Jail in Brazil, Indiana, [11] at 2, without an opportunity to post bond, to be released on other conditions, or for a bond re-determination hearing before an immigration judge, [1] ¶¶ 5, 23.

On February 17, 2026, Khaidapov filed a petition for a writ of habeas corpus [1] and has since moved for a temporary restraining order preventing his transfer outside this District and an expedited bond hearing [4]. For the reasons indicated below, the Court grants Khaidapov's petition and orders a bond hearing.

---

[1] The Court relies on the facts pleaded in Khaidapov's complaint, [1], which the government does not dispute and, indeed, relies on for its own arguments. *See* [10] at 2 (relying on [1] for relevant facts).

STATEMENT

Because Khaidapov was in custody in Illinois when he filed his petition, the court may properly hear the petition regardless of his subsequent transfer to Indiana. *Ex parte Endo*, 323 U.S. 283, 307 (1944); *see also Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *In re Hall*, 988 F.3d 376, 378-79 (7th Cir. 2021). Absent extenuating circumstances, the only proper respondent in a habeas case is the detainee's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004); *see generally Reimnitz v. State's Att'y of Cook Cnty.*, 761 F.2d 405, 409 (7th Cir. 1985) ("The important thing is … that the petitioner name as respondent someone (or some institution) who has both an interest in opposing the petition if it lacks merit, and the power to give the petitioner what he seeks if the petition has merit—namely, his unconditional freedom."). Khaidapov is currently in custody at the Clay County Detention Center in Brazil, Indiana. Because Brinson Swearingen is the Sheriff for Clay County, the government indicates that he is the proper respondent. [11] at 2. Thus, Brinson Swearingen will be substituted for the rest of the listed respondents under Fed. R. Civ. P. 25(d).

Khaidapov was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), together with his wife and young daughter, shortly after entering the country at the southern border in December 2022. [1] ¶ 16; [4] at 16.[2] Khaidapov has no criminal record, "has never missed an ICE check-in, never absconded, and never violated any condition of release." [1] ¶¶ 17–18. He has pending applications for asylum and withholding of removal under the Convention Against Torture and has been authorized to work in the United States. *Id.* ¶ 19.

Khaidapov was arrested by ICE "[w]ithout warning, without explanation, and without any change in circumstances," *id.* ¶ 21, and although the government does not explain the motivation behind this arrest, it does note that Khaidapov "was served with an [Notice To Appear ('NTA')] initiating removal proceedings, which cancelled his parole." [10] at 3. The attached NTA asserts that the reason Khaidapov is subject to removal is that he was "not … paroled after inspection by an Immigration Officer. [10-1] at 1.

This assertion is inconsistent with the government's primary argument: that the instant matter "is not like most of the other habeas cases that judges in this district and elsewhere have recently been addressing"—including this Court, *see, e.g., Quintana Garcilazo v. Olson, et al.,* 25 CV 13321, Doc. 7 (Oct. 31, 2025)—because Khaidapov "was detained at the border and *paroled* out of custody." [10] at 1 (citing [1] ¶ 16) (emphasis in original). The Court will accept the government's implied assertion that the reason for removal provided on the NTA is incorrect and concludes Khaidapov was paroled under 8 U.S.C. § 1182(d)(5).

---

[2] The Court uses the blue CM/ECF pagination in the upper-right corner of the filing.

"Immigration detention is governed by two statutory sections: 8 U.S.C. §§ 1225 and 1226." *Ochoa Ochoa v. Noem*, 25 CV 10865, 2025 WL 2938779, at *4 (N.D. Ill. Oct. 16, 2025). As with other recent habeas cases in this District, *see id.* at *5 n.8 (collecting cases), the central question here is whether the government's authority to detain Khaidapov arises under § 1225 or § 1226. If he is detained pursuant to § 1225, his detention is mandatory; if he is detained under § 1226, he is entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *id.* at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). These provisions are necessarily mutually exclusive: "a noncitizen cannot be subject to both mandatory detention under § 1225(b)(2)(A) and eligible for bond under § 1226(a)." *Ramirez Martinez v. Noem*, 25-CV-12029, 2025 WL 3145103, at *6 (N.D. Ill. Nov. 11, 2025) (citing *Miguel v. Noem*, 25 C 11137, 2025 WL 2976480, at *4 (N.D. Ill. Oct. 21, 2025)).

The Supreme Court has instructed that § 1226(a) "applies to aliens already present in the United States" and "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 583 U.S. at 303. The Court thus understands the government's opposition to Khaidapov's petition to be this: that Khaidapov is not "already present in the United States" for the purpose of the default rule of *Jennings*, *id.*, because as a parolee he is an "applicant for admission" under § 1225. [10] at 1–2. In the government's view, Khaidapov's parole under § 1182(d)(5)(A) creates a legal stasis where he is treated "as if stopped at the border" indefinitely. *Id.* at 2 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). For his part, Khaidapov contends that he is not an "applicant for admission" as defined in § 1225(a). [13] at 8–9.

The Court agrees with the government that Khaidapov is an applicant for admission for the purpose of § 1225. It disagrees with the government about the consequences of that designation.

Section § 1225(a) provides the following statutory definition of application for admission: "An alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). There is no dispute that Khaidapov is an alien and that he is present in the United States, so the Court concludes he is an applicant for admission under that definition.

While the government does not expressly indicate which part of § 1225(b) it relies on to detain Khaidapov without bond, the Court understands the government

to invoke § 1225(b)(2). *See* [10] at 4 (citing § 1225(b)(2)).[3] Section 1225(b)(2)(A)[4] provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer *determines that an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (Emphasis added).

"As other courts have recognized, this language requires that several conditions must be met to impose mandatory detention under Section 1225(b)(2). The noncitizen must be: (1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Rodriguez-Acurio v. Almodovar*, 2:25-CV-6065 (NJC), 2025 WL 3314420, at *22 (E.D.N.Y. Nov. 28, 2025) (cleaned up). Khaidapov is an applicant for admission as defined by § 1225(a) and has not argued that he is "clearly and beyond a doubt entitled to be admitted," so the applicability of § 1225(b)(2) depends on whether he is "seeking admission."

The Court concludes that Khaidapov is not seeking admission for the purpose of mandatory detention under § 1225(b)(2). The government does not address whether Khaidapov is seeking admission—a term not defined by the statute—but seems to assume that an applicant for admission is necessarily seeking admission, or that the terms are synonymous. *See* [10] at 3 ("As stated above, his status reverts to the status he was when his parole was granted–that of an applicant for admission."). While this assumption may make intuitive sense—a person who is applying for something is generally seeking that thing—it is not supported by the statutory text.

First, the definition of applicant for admission provided by § 1225(a)(1) merely requires a noncitizen to be "present" in the United States. It does not require that the noncitizen seek or intend to seek anything. The label "applicant for admission" does not therefore actually indicate or require that anything is being sought, based on the plain language of the statute.

Second, "§ 1225(b)(2)(A) expressly refers to both an 'applicant for admission' and 'an alien seeking admission.' Congress's use of those two different phrases within the same subsection strongly suggests that it meant to distinguish between an 'applicant for admission' and 'an alien seeking admission.'" *Ramirez Martinez*, 2025 WL 3145103, at *6; *see also United States v. Feeney*, 100 F.4th 841, 846 (7th Cir. 2024) ("According to the rule against surplusage, we aim to give independent meaning to the entire text so that no part is rendered meaningless."). Under basic principles of

---

[3] Section 1225(b)(1), the other potential source of mandatory detention, applies to "aliens arriving in the United States and certain other aliens *who have not been admitted or paroled*, 8 U.S.C. § 1225(b)(1) (emphasis added). Because the government's arguments rely on the fact of Khaidapov's parole, the Court does not see how this provision could apply. Nor does the government explain.

[4] Sections 1225(b)(2)(B) and (C) deal with exceptions to § 1225(b)(2)(A) not relevant here.

statutory interpretation, the Court must therefore interpret "seeking admission" to mean something distinct from "applicant for admission." *See Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("What is more, Defendants' construction would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction.").

The government does not provide any definition of "seeking admission" for the purpose of § 1225(b)(2), nor does it indicate why Khaidapov fits in that category. But "courts have repeatedly held that the term requires some active desire of process toward admission." *Rodriguez-Acurio*, 2025 WL 3314420, at *22 (cleaned up). And "admission" is defined elsewhere in Title 8 as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* (quoting 8 U.S.C. § 1101(a)(13)(A)). Thus, "[u]nder a straightforward reading of the statute, 'seeking admission is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering.'" *Id.* (quoting *Hyppolite v. Noem*, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025)). Khaidapov, who has been paroled in the United States for years, does not fit into that category.

This Court therefore "joins the overwhelming majority of district courts in concluding that an alien who has been residing in the United States for an extended period of time is not "seeking admission" within the meaning of § 1225(b)(2)(A)." *Ramirez Martinez*, 2025 WL 3145103, at *6 (collecting cases). Because Khaidapov is not "seeking admission," he is not subject to detention under § 1225(b)(2).

As referenced above, the government relies on *Thuraissigiam* to argue that Khaidapov should be treated as though he has just been "stopped at the border." [10] at 2 (quoting *Thuraissigiam,* 591 U.S. at 139); *see also Thuraissigiam,* 591 U.S. at 139 ("On the contrary, aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'") (citation omitted). But the Court is not persuaded that *Thuraissigiam* dictates a different result.

*Thuraissigiam* involved a noncitizen apprehended 25 yards from the border just moments after crossing. *Thuraissigiam,* 591 U.S. at 114. Critically—and unlike Khaidapov—Thuraissigiam was never paroled and was challenging his removal under 8 U.S.C. § 1225(b)(1), a different provision. *Id.* Additionally, Thuraissigiam's habeas "petition made no mention of release from custody," *id.* at 115, and instead sought "ultimately, the opportunity to remain lawfully in the United States, *id.* at 119. His petition failed because of that disconnect. *See id.* at 119–20 ("In this case … the relief requested falls outside the scope of the writ as it was understood when the Constitution was adopted."). In other words, *Thuraissigiam* involved a different challenge and fundamentally different set of facts to custody under a different

statutory provision. It therefore does not call into question the Court's interpretation of the provision actually at issue here.

In the alternative, the government repeats its much-rejected argument that *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), requires Khaidapov be held without bond. [10] at 5. The Court sees no reason to reconsider its previous rejection of this same argument, *see generally Quintana Garcilazo*, 25 CV 13321, Doc. 7 (Oct. 31, 2025), especially in light of the Seventh Circuit's initial assessment of the relevant legal issues in its recent decision in *Castanon-Nava*. *See* 161 F.4th at 1062 ("Thus, we conclude on this preliminary record that Defendants are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested without a warrant, are subject to mandatory detention under § 1225(b)(2)(A).").

Because the government has not identified any provision of § 1225(b) that applies to Khaidapov, the Court concludes that the basis for his detention must be § 1226(a), the "default rule" for those "already present in the United States". *Jennings*, 583 U.S. at 303. And under § 1226(a), Khaidapov is entitled to the bond hearing that he seeks. *Id.* at 306.

The Court also holds that Khaidapov is entitled to due process rights under the Fifth Amendment, as he is a person within the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce a [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). The Court therefore applies the three-part framework set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) (the determination as to what process is due requires a balancing of the private interest at stake in the deprivation; the risk of an erroneous deprivation and the value, if any, of additional procedural safeguards; and the government's countervailing interests). Khaidapov's liberty is at stake, and the government has not suggested any additional procedural safeguards that could lessen that risk. Nor has the government set forth any countervailing interests: Indeed, the government should have its own "substantial interest in credible, transparent, and accountable law enforcement efforts. The government has an even greater interest in upholding the fundamental principles set forth in the U.S. Constitution, which includes the due process of law." *See Torres Maldonado v. Crowley*, 25-cv-12762, Doc. 16 at *2 (N.D. Ill. Oct. 24, 2025).

CONCLUSION

For these reasons, the Court grants Khaidapov's petition for writ of habeas corpus. [1]. Because the Court grants the habeas petition, Khaidapov's motion for a temporary restraining order [4] is denied as moot. The Court orders Respondent Brinson Swearingen to provide Khaidapov with a release hearing under § 1226(a)

within five days of the judgment to be entered in this case or otherwise to release him.

The Clerk of Court is directed to add Brinson Swearingen as a respondent in his official capacity as Sheriff for Clay County, Indiana. Respondents Pam Bondi, Attorney General of the United States; Kristi Noem, Secretary of U.S. Department of Homeland Security; Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement; United States Immigration and Customs Enforcement; and Samuel Olson, Field Office Director, ICE Enforcement and Removal Operations, Chicago Field Office are dismissed from this matter. The Court declines to issue attorney's fees.

Because this order provides the full relief to which Khaidapov is entitled, the Clerk shall enter a final judgment order in favor of petitioner and terminate this civil case.

ENTER:

Date: February 26, 2026

_____
Georgia N. Alexakis
United States District Judge